UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
NORTHERN DIVISION
ASHLAND

| | | |
|---|---|---|
| LINDSEY SAVAGE, | ) | |
| | ) | Civil Action No. 07-118-ART |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | |
| | ) | **MEMORANDUM OPINION AND** |
| CARTER COUNTY BOARD | ) | **ORDER** |
| OF EDUCATION, et al., | ) | |
| | ) | |
| Defendants. | ) | |

*** *** *** ***

Plaintiff Lindsey Savage filed this lawsuit as a result of sexual harassment that she allegedly

suffered at the hands of a school resource officer while she was a student at East Carter High School

in Grayson, Kentucky.   The complaint named six defendants: (1) the Carter County Board of

Education ("the School Board"); (2) Ada Steele, the former principal of East Carter High; (3) Jerry

Clifton Perkins, the former assistant principal of East Carter High; (4) Clayton James, the former

school resource officer who allegedly harassed the plaintiff; (5) the Grayson City Police Department,

which employed Officer James; and (6) Keith Hill, the chief of police for the City of Grayson.  R.

1.[1]  Defendants Steele, Perkins, and the School Board (collectively, "the movants") have now filed

six motions for partial summary judgment.  R. 77; R. 78; R. 79; R. 80; R. 81; R. 82.  These motions

collectively seek summary judgment in favor of the movants on all of the plaintiff's claims against

them.  The Court has already granted one of these motions by separate order, R. 92, because the

plaintiff conceded that summary judgment was appropriate.  Now that the other motions have been

---

[1]Defendants Hill and the Grayson City Police Department, however, have been previously
dismissed as parties to this action.  *See* R. 40; R. 69.

fully briefed, the Court concludes that they should all be granted with the exception of R. 81, which will be granted in part and denied in part.

## I. Background

This case stems from a series of interactions between Plaintiff Lindsey Savage and Defendant Clayton James that occurred while Savage was a student at East Carter High School and James was the school's resource officer.[2]  The plaintiff and Officer James first met in the fall of 2005, during Savage's sophomore year of high school.  *See* R. 77, Ex. A, Dep. of Lindsey Savage at 9.  After their initial introduction, they began corresponding with each other via e-mail and talking to each other at school.  *Id.* at 19-20.  Their conversations were normally related to church.  *Id.* at 30.  The plaintiff testified in her deposition that James only made one inappropriate comment to her during her sophomore year:  while talking to the plaintiff at school one day, James stated that the plaintiff "was trying to date his son to get to him [i.e., Officer James]."  *Id.* at 25.  Although she considered the comment inappropriate, the plaintiff did not tell any teachers, school administrators, or school counselors about it.  *Id.* at 25-26.  Other than that one comment, the plaintiff says that there was nothing inappropriate about any of her other communications with James during her sophomore year, and none of the other communications made her feel uncomfortable.  *Id.* at 22-23, 27-28.

In the fall semester of the plaintiff's junior year, however, the nature of their interaction appears to have changed.  First, the plaintiff's contact with Officer James became more frequent.  *See id.* at 34.  He started sitting with her in the school's lunchroom, walking her to her classes, waiting for her by her locker, meeting her at football games, and he once met her at another student's

---

[2]A school resource officer is a police officer who is assigned to a school.

2

house. *See id.* at 33, 36. He also went to a service at her church once and gave her a bookmark on which he had written that he wanted to be "together in heaven" with the plaintiff. *Id.* at 49. The plaintiff viewed that as inappropriate, and it made her feel uncomfortable. *Id.* at 49-51. Nevertheless, she did not tell anyone that Officer James had even been present at her church. *Id.* at 50.

The interaction between Officer James and the plaintiff also started to take on sexual connotations during the fall semester of the plaintiff's junior year. For instance, at lunch one day, the plaintiff's friends were discussing whether forty-year-old men could get erections, and Officer James said, "You'd be surprised." *Id.* at 52. The plaintiff, however, did not tell any teachers, school administrators, or school counselors—or anyone else for that matter—about Officer James' comment. *Id.* at 54-55.

Officer James also asked the plaintiff's friends what he should get her for her birthday, and then he told the plaintiff that he was going to get her handcuffs so that she "could get practice in for him." *Id.* at 56. Handcuffs later came up in another conversation when Officer James, while walking the plaintiff to class, told her that "if he ever got [her] in handcuffs [she] wouldn't be able to walk again." *Id.* at 63. The plaintiff did not tell anyone about either of these incidents though. *Id.* at 60, 64-65.

In another incident, some of the plaintiff's friends were teasing Officer James about his teenage son's interest in women with large breasts, and Officer James looked at the plaintiff and said, "Like father, like son." *Id.* at 60. Again, the plaintiff did not report the comment to any school authorities. *Id.* at 61.

The record also reveals that Officer James would frequently walk behind the plaintiff at the

3

school and make the comment that "[c]rack kills, but not [the plaintiff's] crack." *Id.* at 62. The plaintiff never told anyone about those comments. *Id.* at 63.

Once, while the plaintiff was sitting outside a classroom taking a makeup test, Officer James approached her, noticed that she had a hole in her jeans, and then "took his finger and put it in that hole and said that he'd like to get his hand down there." *Id.* at 65. The plaintiff did not tell anyone about this incident either. *Id.* at 66-67.

On another occasion, Officer James told the plaintiff that he wanted to date the girl who wore the green dress to homecoming. *Id.* at 73. Since the plaintiff wore a green dress to homecoming, she took that comment to mean that Officer James wanted to date her. *Id.* That comment made the plaintiff feel uncomfortable, but again, she did not tell anyone about it. *Id.* at 74.

At some point during the semester, the plaintiff told Officer James that she was sore from basketball conditioning, and he told her that he had big hands and could give her a rubdown. *Id.* at 75. She did not tell anyone about that comment either. *Id.* at 75-76.

In addition to these specific incidents, Officer James also sent the plaintiff e-mails in which he stated that he wanted to kiss her and hold her. *Id.* at 78. Although she testified that she considered such e-mails inappropriate, the plaintiff also stated that she did not ask Officer James to stop e-mailing her, nor did she tell anyone about the e-mails. *Id.* at 78-79.

School personnel did not become aware of the inappropriate nature of the relationship between the plaintiff and Officer James until the plaintiff admitted it to a school counselor during the last week of October of 2006. Nevertheless, school administrators did receive complaints from teachers about the fact that Officer James walked the plaintiff to class, ate lunch with her, and pulled her out of class to talk to her. *See* R. 83, Ex. 2, Police Report at 1. In particular, teacher Kimberly

4

Hale made complaints because the relationship made her uncomfortable. Specifically, Hale was uncomfortable with the fact that Officer James would often walk the plaintiff to class and then sit with her in the classroom during class. R. 88, Dep. of Kimberly Hale at 7. Hale was also uncomfortable with the fact that Officer James called the plaintiff out of Hale's class to come to his office on one occasion. *Id.* Because she was so troubled by that, she refused to let the plaintiff out of class when Officer James called her to his office on a second occasion. *Id.*

Hale shared her discomfort with the school counselor, Sheila Porter. *Id.* at 8. Porter responded to the complaint by saying "that she was aware of the situation and she was trying to take care of it." *Id.* at 15. Hale also complained to Assistant Principal Perkins that there was something inappropriate about Officer James walking the plaintiff to class and sitting with her in Hale's classroom. *Id.* at 11-12. After receiving Hale's complaints, Assistant Principal Perkins spoke with Officer James about the situation. *See id.* at 15. Officer James told him that nothing improper was going on and that he was merely counseling the plaintiff. Assistant Principal Perkins, together with Counselor Porter, also met with the plaintiff to speak with her about the situation. R. 89, Dep. of Sheila Porter at 8; R. 90, Dep. of Jerry Clifton Perkins at 12. This meeting took place in late September or early October of 2006. R. 89, Dep. of Sheila Porter at 8; R. 90, Dep. of Jerry Clifton Perkins at 12. At the meeting, the plaintiff informed Counselor Porter and Assistant Principal Perkins that Officer James was not making her feel uncomfortable, and that he was counseling her because he was a minister. R. 89, Dep. of Sheila Porter at 8; *see also* R. 90, Dep. of Jerry Clifton Perkins at 12. Based on these explanations, Counselor Porter and Assistant Principal Perkins did not believe that there was anything inappropriate about the plaintiff's relationship with Officer James. R. 89, Dep. of Sheila Porter at 8.

On October 25, 2006, a student approached Counselor Porter and told her that the plaintiff had expressed concerns about the fact that Officer James was sitting with her at lunch, talking with her in the hallways and classrooms, and driving by her house. *Id.* at 27. This made Porter question the nature of the relationship between the plaintiff and Officer James. *See id.* As a result, Porter talked to some of the plaintiff's teachers about the issue. One of the teachers told Porter that Officer James had been to her classroom three times to talk the plaintiff, but that she did not think there was anything inappropriate about it. *Id.* at 12-13. Another teacher told Porter that she had noticed Officer James walk the plaintiff to class and talk to the plaintiff in the hallways, but that teacher did not express any concern about Officer James' actions either. *Id.* at 13. Another teacher told Porter that Officer James had once brought some cookies to some girls in her class. *Id.* at 14. After gathering this information, Porter took it to Principal Steele on October 26. *Id.* at 16. Porter and Steele discussed the information, and then Steele prepared a document entitled "Directives to the ECHS SRO." *Id.*, Ex. 2. This was essentially a code of conduct for Officer James. It prohibited him from: (1) meeting with students in his office unless an administrator was present; (2) sitting with students at lunch unless he sat with different students on a rotating basis; (3) walking students to class unless asked by an administrator to do so; (4) going to classrooms to talk to students; and (5) counseling students. *Id.*

In addition to preparing a list of directives for Officer James, Principal Steele also called the plaintiff to her office and asked the plaintiff if anything inappropriate was going on with Officer James. R. 77, Ex. A, Dep. of Lindsey Savage at 81-82. The plaintiff admittedly told Principal Steele that nothing was going on. *Id.* at 82. Specifically, the plaintiff said that there was nothing inappropriate about her relationship with Officer James, that Officer James simply paid attention to

6

her because they were friends through church, and that other students were probably jealous of the attention that he paid to her.  R. 91, Dep. of Ada Steele at 26.  After speaking with the plaintiff, Principal Steele called Officer James to her office, and he told the same story as the plaintiff.  *Id.*

Immediately after her meeting with Principal Steele, the plaintiff met with Counselor Porter, who also asked her about Officer James' behavior.  R. 77, Ex. A, Dep. of Lindsey Savage at 84.  The plaintiff did not give Porter any indications that Officer James had acted inappropriately, but she did tell Porter that she did not want Officer James to accompany her on an upcoming field trip.  *Id.* at 85-86.  As a result, Principal Steele prevented Officer James from going on the field trip.  R. 91, Dep. of Ada Steele at 33.

On October 30, Counselor Porter informed Principal Steele that she had heard more complaints about the relationship between Officer James and the plaintiff.  *See* R. 91, Dep. of Ada Steele at 27.  As a result, Principal Steele called the plaintiff to her office once again to question her about the situation.  *Id.*  The plaintiff again reassured Principal Steele "that nothing was happening, that there was nothing to be alarmed about, that they were just friends through church and the other kids were jealous because he paid attention to her and they were probably making things up."  *Id.*

Following that meeting with Principal Steele, the plaintiff met again with Counselor Porter. The plaintiff initially maintained that nothing inappropriate had happened, but then she told Porter that she had been receiving e-mails from Officer James.  R. 89, Dep. of Sheila Porter at 35.  Porter then told Principal Steele about the e-mails.  R. 91, Dep. of Ada Steele at 20.  Steele testified in her deposition that she had no prior knowledge of any e-mails between the plaintiff and Officer James. *Id.*  The plaintiff likewise admits that prior to bringing the e-mails to Sheila Porter's attention, she had not told any school administrators, counselors, or teachers about them.  R. 77, Ex. A, Dep. of

7

Lindsey Savage at 80.

Upon learning about the e-mails, Principal Steele contacted the school system's technology coordinator and instructed him to check for inappropriate e-mails in Officer James' e-mail account, which had been provided to him by the school system. *See* R. 91, Dep. of Ada Steele at 15. In addition, the issue was reported to the authorities. *Id.* at 42, 46.

After the school system's technology coordinator collected inappropriate e-mails, the superintendent of the school system called a meeting with Principal Steele, the mayor, the chief of police, and the school system's personnel director. *Id.* at 13-15. At that meeting, the school decided not to allow Officer James back. *Id.* The next day, the Grayson Police Department also fired him. *Id.* at 14.

The plaintiff filed this lawsuit on December 17, 2007. R. 1. The complaint alleged fifteen different claims against the six defendants. Of those fifteen claims, fourteen were asserted against Defendants Steele, Perkins, and the School Board. However, summary judgment has already been granted in favor of Defendants Steele, Perkins, and the School Board on three of those fourteen claims—i.e., Counts II, III, and VI—because the plaintiff conceded that those claims were without merit. *See* R. 83 at 13; R. 92. Therefore, only eleven claims against Defendants Steele, Perkins, and the School Board remain to be adjudicated. The currently pending motions seek summary judgment in favor of Defendants Steele, Perkins, and the School Board on each of those remaining claims.

## II. Count I – 42 U.S.C. § 1983

Count 1 of the plaintiff's complaint alleges claims under 42 U.S.C. § 1983, which provides a cause of action for individuals whose constitutional rights have been violated by persons acting

8

under color of state law.  As an initial matter, the movants have not raised the issue of whether the plaintiff's constitutional rights were actually violated.  Therefore, this issue is not before the Court.  Instead, the movants argue that if the plaintiff's constitutional rights were violated, it was not due to any action or inaction on their part.  The movants are correct in this regard; even when the evidence is viewed in the light most favorable to the plaintiff—as it must be at the summary judgment stage, *see Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986) (citing *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 158-59 (1970))—the record simply does not permit a finding that the movants caused the violation.  Therefore, the movants are entitled to summary judgment on the plaintiff's § 1983 claims.

## A.    § 1983 claims against the School Board and Defendants Steele and Perkins in their official capacities

As a local governmental entity, the School Board can be sued under § 1983 just as well as any individual can.  *See Soper v. Hoben*, 195 F.3d 845, 853-54 (6th Cir. 1999).  However, because "*respondeat superior* is not available as a theory of recovery under section 1983," *Doe v. Claiborne County, Tenn. By and Through Claiborne County Bd. of Educ.*, 103 F.3d 495, 507 (6th Cir. 1996) (citing *Monell v. Dep't of Social Servs.*, 436 U.S. 658, 691 (1978)), the School Board can only be held liable on the basis of its own conduct.  In other words, the plaintiff cannot prevail on her § 1983 claim against the School Board unless she can show that the School Board itself was a wrongdoer.  *See id.* (citing *Collins v. City of Harker Heights, Tex.*, 503 U.S. 115, 122 (1992)).  To make such a showing, the plaintiff must establish that the School Board had a policy or custom that led to, caused, or resulted in the deprivation of her constitutional rights.  *See id.*  Since she has presented no evidence of such a policy or custom, though, there is no way that she can prove that the School

Board itself has caused a violation of her constitutional rights.  Accordingly, the plaintiff's § 1983 claim against the School Board must fail as a matter of law.

The plaintiff, however, claims that her constitutional rights were violated as a result of the School Board's custom of failing to take action to prevent the sexual abuse of students.  To establish the existence of such a custom, the plaintiff must show that the School Board had actual or constructive notice of a clear and persistent pattern of sexual abuse by school employees and tacitly approved of that conduct.  *See Doe*, 103 F.3d at 508.  In other words, the plaintiff must demonstrate that the need for the School Board to take action to protect her was so obvious that the School Board's "decision not to act can be said to amount to a 'policy' of deliberate indifference to [the plaintiff's] constitutional rights."  *Id.* (citing *City of Canton, Ohio v. Harris*, 489 U.S. 378, 389 (1989)).  The record, though, contains no evidence that the School Board gave tacit approval to a pattern of sexual abuse or was otherwise deliberately indifferent to the plaintiff's constitutional rights.  First, there is no evidence that the School Board had notice of any sexual misconduct against students.  Moreover, even assuming that it had notice, there is no evidence that the School Board tacitly approved of such misconduct or otherwise acted with deliberate indifference to the plaintiff's constitutional rights.  The simple fact that the plaintiff was subjected to sexual harassment while at school does not prove that the School Board had a custom of failing to prevent sexual misconduct against students.  A "custom" for the purposes of § 1983 liability reflects "a course of action deliberately chosen from among various alternatives."  *Id.* at 508 (citing *City of Oklahoma v. Tuttle*, 471 U.S. 808, 823 (1985)).  Here, there is no evidence that the School Board deliberately decided that it would fail to take action to prevent the sexual abuse of its students.

All of the plaintiff's evidence and arguments on this issue are directed toward showing that

10

Principal Steele and Assistant Principal Perkins turned a blind eye toward a pattern of sexual misconduct on the part of Officer James. This misses the point of liability under § 1983, though. Under § 1983, the School Board cannot be held vicariously liable for the wrongful conduct of its employees. *See City of Canton*, 489 U.S. at 385 (citing *Monell*, 436 U.S. at 694-95); *Doe*, 103 F.3d at 507 (citing *Monell*, 436 U.S. at 691). Instead, it can only face direct liability for its own wrongful conduct. Therefore, for the purposes of determining the School Board's liability, it is irrelevant whether Principal Steele and Assistant Principal Perkins engaged in wrongful conduct. Rather, all that matters for the question of the School Board's liability is whether the School Board itself engaged in wrongful conduct by enacting a policy or tolerating a custom that led to the violation of the plaintiff's constitutional rights. *See Doe*, 103 F.3d at 507. Since the plaintiff has offered no evidence that would demonstrate the existence of such a policy or custom, there is a complete lack of evidence on an essential element of the plaintiff's § 1983 claim against the School Board. As a result, the School Board is entitled to summary judgment on that claim. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986).

Finally, the § 1983 claims against Defendants Steele and Perkins in their official capacities are the equivalent of claims against the School Board. *See Matthews v. Jones*, 35 F.3d 1046, 1049 (6th Cir. 1994) (citing *Will v. Mich. Dep't of State Police*, 491 U.S. 58, 68 (1989)). Therefore, those claims must fail as a matter of law for the same reasons as the § 1983 claim against the School Board.

**B.     § 1983 claims against Defendants Steele and Perkins in their individual capacities**

It is undisputed that Defendants Steele and Perkins did not personally commit any acts of sexual abuse against the plaintiff. Rather, the plaintiff contends that they caused a violation of her

11

constitutional rights by failing to prevent Officer James from sexually abusing her.  To prevail on such a theory of supervisory liability, the plaintiff must show that Defendants Steele and Perkins had such knowledge of Officer James' likelihood of sexually abusing the plaintiff that their failure to take adequate precautions to protect the plaintiff amounted to deliberate indifference to the plaintiff's constitutional rights.  *See Doe*, 103 F.3d at 513 (quoting *Barber v. City of Salem*, 953 F.2d 232, 240 (6th Cir. 1992)).  The plaintiff cannot make such a showing here, though, because there is no evidence that Defendants Steele and Perkins encouraged Officer James' conduct or directly participated in it, nor is there evidence that they tacitly authorized or approved of the conduct or knowingly acquiesced in it.  *See id.* (quoting *Bellamy v. Bradley*, 729 F.2d 416, 421 (6th Cir. 1984)). To the contrary, all of the evidence shows that Defendants Steele and Perkins acted with an entirely appropriate level of concern for the plaintiff's constitutional rights.  While it is true that Defendants Steele and Perkins received several complaints about the relationship between the plaintiff and Officer James, the more important fact is that they investigated these complaints and then reasonably put their concerns to rest after both the plaintiff and Officer James offered seemingly legitimate explanations for the relationship and gave assurances that there was nothing inappropriate about it. Moreover, once the true nature of the relationship came to light, Defendant Steele immediately informed law enforcement authorities and took action to bar Officer James from the school.  In short, the only failure on the part of Defendants Steele and Perkins was their failure to be omniscient, and they certainly cannot be faulted for that.  Therefore, Defendants Steele and Perkins are entitled to summary judgment on the § 1983 claims made against them in their individual capacities because there is no way that a rational trier of fact could conclude that they acted with deliberate indifference to the plaintiff's constitutional rights.  *See McKinnie v. Roadway Express, Inc.*, 341 F.3d 554, 557

12

(6th Cir. 2003) (citing *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986)).

The plaintiff makes much of the fact that Officer James allegedly harassed two other students on previous occasions. According to the plaintiff, Teacher Kimberly Erwin once complained to Defendant Perkins that Officer James had acted in an inappropriate sexual manner toward a student other than the plaintiff. This, however, is a misstatement of the evidence. Erwin never stated that she complained to Defendant Perkins about sexual misconduct on the part of Officer James. Rather, Erwin testified in her deposition that Officer James had looked down the blouse of a female student to make sure that the student was not hiding cigarettes. *See* R. 86, Dep. of Kimberly Erwin at 11. When another student complained that Officer James had acted inappropriately, Erwin sent that student to the office to lodge a complaint with the administration. *See id.* at 10. Without any additional context, though, it is impossible to say that this evidence indicates that Officer James had committed sexual misconduct. As a result, no rational trier of fact could conclude that this episode gave Defendants Steele and Perkins such notice of Officer James' likelihood of sexually abusing the plaintiff that their failure to take adequate precautions amounted to deliberate indifference to the plaintiff's constitutional rights. *See Doe*, 103 F.3d at 513 (quoting *Barber v. City of Salem*, 953 F.2d 232, 240 (6th Cir. 1992)). This is true regardless of whether this episode is considered on its own or in combination with the rest of the plaintiff's evidence. Thus, this episode does not create a genuine issue of material fact on the issue of deliberate indifference. *See Matsushita*, 475 U.S. at 587.

The plaintiff also contends that Officer James had previously harassed a female student known as "S.D." The evidence does not support this contention either though. Instead, the evidence indicates that both Counselor Porter and Officer James himself had complained to Defendant Perkins

13

about inappropriate behavior on the part of S.D. *See* R. 89, Dep. of Sheila Porter at 24-26; R. 90, Dep. of Jerry Clifton Perkins at 8-10. Counselor Porter testified in her deposition that she spoke to Defendant Perkins about S.D. because she was concerned that S.D. might be infatuated with Officer James due to the fact that S.D. frequently talked about him during counseling. *See* R. 89, Dep. of Sheila Porter at 24-25. Defendant Perkins testified in his deposition that Officer James came to speak to him about S.D. because Officer James was bothered by the fact that S.D. "was hanging around him a lot and calling him daddy." R. 90, Dep. of Jerry Clifton Perkins at 9. According to Defendant Perkins, he never had any concerns that Officer James had acted inappropriately toward S.D. *Id.* at 10. Thus, the evidence does not indicate that the incident with S.D. involved any sexual misconduct on the part of Officer James. Accordingly, this incident is completely irrelevant to the issue of deliberate indifference.

The plaintiff also relies heavily on the report of Detective Markeal Padgett, which says that Defendant Steele had been hearing complaints from teachers about Officer James for months, but had let the complaints go because she thought that the teachers were just trying to get Officer James in trouble since they did not like him. *See* R. 83, Ex. 2, Police Report at 1. Defendant Steele disputes the accuracy of the report, however. *See* R. 91, Dep. of Ada Steele at 23-35. Because the Court must view the evidence in the light most favorable to the plaintiff, though, the Court accepts the report at face value. Nevertheless, this does not create a genuine issue of material fact. Even if Defendant Steele initially ignored complaints about Officer James, the simple fact of the matter is that the record does not permit a finding that she acted with deliberate indifference to the plaintiff's constitutional rights. Defendant Steele's act of ignoring complaints because she thought they were unfounded is not the same as giving tacit authorization for Officer James' sexual misconduct. *See*

14

*Doe*, 103 F.3d at 513 (holding that deliberate indifference to sexual abuse cannot be found unless the defendant's conduct amounted to tacit authorization of the abuse (citing *Bellamy*, 729 F.2d at 421)).

Finally, the plaintiff's counsel has submitted an affidavit that discusses the prospective testimony of David Baldwin, who was a substitute teacher at East Carter High School during the fall semester of the plaintiff's junior year. According to the affidavit, Baldwin complained to Defendant Steele—and possibly to Defendant Perkins as well—about Officer James' conduct, but was told that there was nothing to it and that he should forget about it. This evidence, according to the plaintiff, shows that the defendants willfully ignored Officer James' sexual misconduct. The problem, however, is that this evidence is inadmissible hearsay and therefore cannot be considered. In opposing a motion for summary judgment, it is permissible for a party to present evidence in an inadmissible *form*, such as an affidavit, but "the evidence itself still must be admissible." *N. Am. Specialty Ins. Co. v. Myers*, 111 F.3d 1273, 1283 (6th Cir. 1997) (citing *Treff v. Galetka*, 74 F.3d 191, 195 (10th Cir. 1996)). The evidence at issue here is clearly inadmissible hearsay because it is contained in an affidavit of the plaintiff's counsel rather than an affidavit of Baldwin himself. In other words, since the plaintiff's counsel would not be able to testify at trial as to what Baldwin had said or done, he also cannot present such evidence through his own affidavit at the summary judgment stage. Therefore, the affidavit amounts to nothing more than inadmissible hearsay and cannot be considered. *See* Fed. R. Civ. P. 56(e) ("A supporting or opposing affidavit must be made on personal knowledge, set out facts that would be admissible in evidence, and show that the affiant is competent to testify on the matters stated."); *see also Alpert v. United States*, 481 F.3d 404, 409 (6th Cir. 2007) (holding that inadmissible hearsay cannot be considered in opposition to a motion

15

for summary judgment).

Nevertheless, it would not change anything even if the Court were to consider the evidence presented in the affidavit. Regardless of the information contained in the affidavit, the fact remains that Defendants Steele and Perkins made appropriate inquiries into the nature of the relationship between the plaintiff and Officer James and took prompt and appropriate steps to remedy the situation once the inappropriate nature of the relationship came to light. On the basis of these facts, there is no way that a reasonable trier of fact could conclude that Defendants Steele and Perkins acted with deliberate indifference to the plaintiff's constitutional rights.

### III. Count IV – Title IX Claims Against the School Board and Defendants Steele and Perkins in Their Official Capacities

Title IX prohibits sex discrimination in any federally funded education program. *See Horner v. Ky. High Sch. Athletic Ass'n*, 43 F.3d 265, 271 (6th Cir. 1994) (citing 20 U.S.C. § 1681(a)). Here, the plaintiff claims that Officer James' sexual harassment amounted to sex discrimination in violation of Title IX. To prevail on her Title IX claim against the School Board, the plaintiff must prove that: 1) a School Board official who had authority to take corrective action to end Officer James' sexual harassment had actual knowledge of the harassment; and 2) the School Board's response to the harassment amounted to deliberate indifference. *See Gebser v. Lago Vista Indep. Sch. Dist.*, 524 U.S. 274, 290 (1998); *see also Klemencic v. Ohio State Univ.*, 263 F.3d 504, 510 (6th Cir. 2001) (listing the prima facie elements of a Title IX sexual harassment claim against an educational institution (citing *Morse v. Regents of the Univ. of Colo.*, 154 F.3d 1124, 1127-28 (10th Cir. 1998))). The plaintiff cannot prove either of these elements though. First, the plaintiff has

16

failed to present any evidence that a School Board official who had authority to take corrective action had actual knowledge of the Officer James' inappropriate conduct.  Second, deliberate indifference has substantially the same meaning under both Title IX and § 1983.  *Williams ex rel. Hart v. Paint Valley Local Sch. Dist.*, 400 F.3d 360, 369 (6th Cir. 2005) (citing *Flores v. Morgan Hill Unified Sch. Dist.*, 324 F.3d 1130, 1135 (9th Cir. 2003); *Gant v. Wallingford Bd. of Educ.*, 195 F.3d 134, 141 (2d Cir. 1999)).  Thus, as stated above in Part II. A., there is no evidence the School Board acted with deliberate indifference.  As a result, the School Board is entitled to summary judgment on the plaintiff's Title IX claim.  *See Celotex Corp.*, 477 U.S. at 322-23.  And, since the official capacity claims against Defendants Steele and Perkins are merely another way of pleading claims against the School Board, *see Kentucky v. Graham*, 473 U.S. 159, 165-66 (1985), Defendants Steele and Perkins are also entitled to summary judgment on the plaintiff's claims against them in their official capacities.

## IV. Count V – Title IX Claims Against Defendants Steele and Perkins in Their Individual Capacities

Defendants Steele and Perkins are entitled to summary judgment on the plaintiff's Title IX claims against them in their individual capacities because Title IX claims can only be brought against entities that receive federal funds, not individuals.  *See Soper v. Hoben*, 195 F.3d 845, 854 (6th Cir. 1999); *Smith v. Metro. Sch. Dist. Perry Twp.*, 128 F.3d 1014, 1019 (7th Cir. 1997).

## V. Count VII – Claims Brought Under Ky. Rev. Stat. § 344.555 Against the School Board and Defendants Steele and Perkins in Their Official Capacities

Count VII of the plaintiff's complaint alleges claims under Ky. Rev. Stat. § 344.555, which

is the state law analog to Title IX.  Because Kentucky courts interpret the civil rights provisions of Ky. Rev. Stat. Chapter 344 consistently with their federal counterparts, *see Williams v. Wal-Mart Stores, Inc.*, 184 S.W.3d 492, 495 (Ky. 2005) (citing *Brooks v. Lexington-Fayette Urban County Hous. Auth.*, 132 S.W.3d 790, 802 (Ky. 2004); *Howard Baer, Inc. v. Schave*, 127 S.W.3d 589, 592 (Ky. 2003); *Bank One, Ky., N.A. v. Murphy*, 52 S.W.3d 540, 544 (Ky. 2001); *Ammerman v. Bd. of Educ. of Nicholas County*, 30 S.W.3d 793, 797-98 (Ky. 2000)), the plaintiff's claims under Ky. Rev. Stat. § 344.555 must fail for the same reasons as her Title IX claims.

### VI. Counts IX, X, XIV, and XV – Failure to Report Child Abuse

Counts IX and X allege respectively that Defendants Steele and Perkins violated Ky. Rev. Stat. § 620.030 when they failed to report her abuse at the hands of Officer James.  Count XIV alleges that their failure to comply with § 620.030 was a negligent performance of a ministerial act, which strips them of official immunity and renders all of the movants liable to the plaintiff.  Count XV alleges in the alternative that the failure to comply with § 620.030 was a bad faith exercise of a discretionary act, which therefore destroys any official immunity and renders the movants liable to the plaintiff.  Although it is unclear why these claims have been pled in such an unorthodox fashion, it is clear that the movants are entitled to summary judgment on all of these counts because the evidence demonstrates that the child abuse reporting requirements of § 620.030 were complied with.  This is all the more true considering that the plaintiff chose not to respond to the motion for summary judgment on these counts and therefore has not directed the Court to any evidence or authority that would support these claims.  *See Lansing Dairy, Inc. v. Espy*, 39 F.3d 1339, 1347 (6th Cir. 1994) (citing *Celotex Corp.*, 477 U.S. at 324; *60 Ivy St. Corp. v. Alexander*, 822 F.2d 1432, 1435

18

(6th Cir. 1987)).

Ky. Rev. Stat. § 620.030(1) requires an individual to make a report to law enforcement authorities whenever that individual knows or has reasonable cause to believe that a child has been abused. Because the reporting requirement is mandatory, Kentucky courts have held that the act of reporting child abuse is a ministerial—rather than discretionary—act for which public school officials can be held liable in the event that they perform the act negligently. *See Nelson v. Turner*, 256 S.W.3d 37, 43 (Ky. Ct. App. 2008). In this case, the evidence does not establish that the movants negligently performed their duty under § 620.030. Rather, the evidence shows that the movants did not know or have reasonable cause to believe that the plaintiff was being abused in any way until she informed the school counselor that she had received inappropriate e-mails from Officer James. Once that information came to light, a report was properly made to law enforcement authorities. In light of these facts, a reasonable trier of fact could only conclude that § 620.030 was fully complied with. Accordingly, the movants are entitled to summary judgment on Counts IX, X, and XIV. *See McKinnie*, 341 F.3d at 557 (citing *Matsushita*, 475 U.S. at 587).

The alternative claim found in Count XV—i.e., that the act of reporting child abuse is a discretionary act that was performed in bad faith in this case—also fails as a matter of law. First, it is clear under Kentucky law that the act of reporting child abuse is a ministerial act rather than a discretionary act. *See Nelson*, 256 S.W.3d at 43. Second, even if there is a discretionary component when it comes to making the determination as to whether a report is required, there can be no liability here because there is absolutely no evidence that the movants exercised such discretion in bad faith. *See Yanero v. Davis*, 65 S.W.3d 510, 523 (Ky. 2001) (holding that a public official cannot be held liable for a discretionary act unless it is shown that the act was not performed in good faith).

Thus, the movants are entitled to summary judgment on Count XV as well. *See Celotex Corp.*, 477 U.S. at 322-23.


## VII. Count XI – Negligence

In Count XI, the plaintiff claims that the movants acted negligently by failing to equip the school e-mail system with monitoring and filtering devices that would have protected the plaintiff from Officer James' inappropriate e-mails. As an initial matter, the Court is unaware of any type of filtering or monitoring device that would have protected the plaintiff from Officer James' e-mails. And since the plaintiff has also failed to respond to the motion for partial summary judgment on this count, the plaintiff has not demonstrated that such devices exist. Moreover, the Court is unaware of any authority under which the movants could be held liable for failing to install such devices on the school's e-mail system. And again, since the plaintiff has not responded to the movants' arguments on Count XI, the plaintiff has failed to point out any such authority.

Finally, and more importantly, the uncontroverted evidence shows that the movants did not even have the ability to install monitoring and filtering devices on the school e-mail system. According to Barrett Bush, the Director of Technology for the Carter County Board of Education, the e-mail system used by the Carter County school system at the time in question "was housed in an email server owned, managed and controlled by the Kentucky Department of Education." R. 80, Ex. E, Aff. of Barrett Bush at 1-2. This means that the monitoring and filtering devices utilized in the Carter County e-mail system were selected, installed, and maintained solely by Kentucky Department of Education personnel, and not the movants. *See id.* at 2. The movants, therefore, had no authority to install, remove, or modify any monitoring or filtering devices on the Carter County

e-mail system.  *See id.*  Since the undisputed evidence shows that the movants did not even have the ability to install monitoring and filtering devices on the school e-mail system, it certainly cannot be said that they were negligent in failing to do so.  As a result, the movants are entitled to summary judgment on County XII.  *See* Fed. R. Civ. P. 56(c).

## VIII. Count XII – Negligent Hiring, Supervision, and Retention

### A.      Negligent Hiring claims against the School Board and Defendants Steele and Perkins

In her response, the plaintiff concedes that the movants should be granted summary judgment on the negligent hiring claims.  R. 83 at 18.  Accordingly, the Court will grant summary judgment in favor of the movants on those claims.

### B.      Negligent Supervision and Retention claims against the School Board and Defendant Steele in her official capacity

The motion for summary judgment on Count XII simply argues that the negligent supervision and retention claims brought against the School Board and against Defendant Steele in her official capacity should not survive the summary judgment stage because a school board cannot be held vicariously liable in a judicial court for an employee's negligence.[3]  The problem with this argument

---

[3]It is true that the motion also argues that there is no evidence that Defendant Steele was negligent.  However, this argument is only phrased in terms of Defendant Steele's liability in her individual capacity.  Thus, this argument has not been advanced with respect to the claims against the School Board or the claims against Defendant Steele in her official capacity.  Nevertheless, even if it were advanced with respect to those claims, it would be an insufficient basis for summary judgment.  The fact that Defendant Steele did not act negligently is not dispositive of whether the School Board acted negligently.  Likewise, since the claims against Defendant Steele in her official capacity are essentially claims against the School Board, *see Commonwealth of Ky. Bd. of Claims v. Harris*, 59 S.W.3d 896, 899 (Ky. 2001) (citing *Graham*, 473 U.S. at 165-66), that fact is also not dispositive of whether Defendant Steele is liable in her

is that it presents a fundamental misunderstanding of the claims of negligent supervision and retention. These claims do not impose vicarious liability upon employers. Rather, they impose direct liability as a result of an employer's own negligence. *See Ten Broeck Dupont, Inc. v. Brooks*, __ S.W.3d __, No. 2006-SC-000484-DG, 2009 WL 1439178, at *25 (Ky. May 21, 2009). In other words, the claims of negligent supervision and retention assert that the School Board itself has acted negligently, not merely that the School Board is vicariously liable for the negligence of an employee. Thus, the issue of whether a school board can be held vicariously liable in a judicial court for an employee's negligence is irrelevant. Since that is the only argument that has been advanced with respect to the negligent supervision and retention claims against the School Board and Defendant Steele in her official capacity, the Court is unable to grant summary judgment on those claims.

**C.  Negligent Supervision and Retention claims against Defendant Steele in her individual capacity**

The torts of negligent retention and negligent supervision allow employers to be held directly liable when their negligent retention or supervision of an employee has caused harm. Under the facts of this case, the plaintiff cannot establish the requisite elements of these claims against Defendant Steele in her individual capacity.

"Negligent retention . . . occurs when, during the course of employment, the employer becomes aware or should have become aware of problems with an employee that indicated his unfitness, and the employer fails to take further action such as investigating, discharge, or reassignment." *Ten Broeck Dupont, Inc.*, __ S.W.3d __, 2009 WL 1439178 at *28 (quoting *Garcia v. Duffy*, 492 So. 2d 435, 438 (Fla. Dist. Ct. App. 1986)) (alteration in original). "The test for

official capacity.

22

liability is [whether the employer] knew, or reasonably should have known, that (1) [the employee] was unfit for the job for which he was employed, and (2) whether his placement or retention in that job created an unreasonable risk of harm to [others]. *Id.* at *24 (quoting *Oakley v. Flor-Shin, Inc.*, 964 S.W.2d 438, 442 (Ky. Ct. App. 1998)) (alterations in original). Likewise, under the substantially identical claim of negligent supervision, "an employer may be held liable for negligent supervision only if he or she knew or had reason to know of the risk that the employment created." *Booker v. GTE.net LLC*, 350 F.3d 515, 517 (6th Cir. 2003) (citing Restatement (Second) of Agency § 213 (1958)) (applying Kentucky law). The elements of these claims cannot be established in this case. Because the plaintiff denied that there was anything inappropriate about her relationship with Officer James and offered a reasonable explanation for the relationship, Defendant Steele did not know or have reason to know of Officer James' sexual harassment of the plaintiff until the plaintiff informed the school counselor that she had received inappropriate e-mails from Officer James. Once that information came to light, though, Defendant Steele took immediate action to remove Officer James from his job and prevent him from further harming the plaintiff. The touchstone of all negligence claims is the exercise of reasonable care, *see, e.g., Ten Broeck Dupont, Inc.*, ___ S.W.3d ___, 2009 WL 1439178 at *23, and the evidence in this case does not permit a finding that Defendant Steele acted with anything but reasonable care. Accordingly, Defendant Steele is entitled to summary judgment on the negligent supervision and retention claims asserted against her in her individual capacity since no reasonable trier of fact could conclude that she failed to take action at a time when she knew or should have known that Officer James posed a risk of harm to others.

**D.    Negligent Supervision and Retention claims against Defendant Perkins**

The motion for summary judgment does not make any substantive arguments with regard to

23

the merits of the negligent supervision and retention claims asserted against Defendant Perkins. Rather, the motion merely states in a footnote that Count XII is not asserted against Defendant Perkins. It is true that the heading for Count XII specifically refers to several defendants, including Defendant Steele, while making no mention of Defendant Perkins. However, it would be a strained and overly technical reading of the complaint to say that Count XII does not assert a claim against Defendant Perkins simply because he is not specifically mentioned in the heading.

Under the liberal system of notice pleading established by the Federal Rules of Civil Procedure, "[a] plaintiff need only provide 'a short and plain statement of the claim showing that the pleader is entitled to relief.'" *Smith v. City of Salem, Ohio*, 378 F.3d 566, 577 (6th Cir. 2004) (quoting Fed. R. Civ. P. 8(a)(2)). "Such a statement must simply 'give the defendant fair notice of what the plaintiff's claim is and the grounds upon which it rests.'" *Id.* (quoting *Swierkiewicz v. Sorema N.A.*, 534 U.S. 506, 512 (2002)). In addition, pleadings must be construed liberally so as "to prevent errors in draftsmanship from barring justice to litigants." *Carter v. Ford Motor Co.*, 561 F.3d 562, 566 (6th Cir. 2009) (quoting *Ritchie v. United Mine Workers of Am.*, 410 F.2d 827, 833 (6th Cir. 1969)). In light of these standards, it is clear that Count XII sufficiently pleads a claim against Defendant Perkins. Despite the fact that his name does not appear in the heading of Count XII, the actual substantive language of Count XII makes specific reference to him. *See* R. 1, Compl. at ¶ 147. Moreover, the complaint also alleges negligence on the part of "[the School Board], its agents, servants, assigns, and each of the other defendants in their individual and Official capacities." *Id.* at ¶ 149, 150. This language undoubtedly encompasses Defendant Perkins and—when combined with the more specific factual allegations elsewhere in Count XII—it gives him notice of the claim and the grounds upon which it rests. Thus, although Count XII was inartfully drafted, Defendant

24

Perkins is wrong in his assertion that County XII does not allege a claim against him.  And since he has not made any alternative arguments on the merits, this claim must survive the summary judgment stage.[4]

## IX. Count XIII – Failure to Adopt a Code of Student Rights and Responsibilities

In Count XIII, the plaintiff alleges that the movants are liable to her because they failed to adopt a code of student rights and responsibilities pursuant to Ky. Rev. Stat. § 160.295.  Because that statute merely permits—but does not require—public school districts to adopt and promulgate a code of student rights and responsibilities for secondary schools, the Court can conceive of no circumstance under which anyone could be held liable for failing to adopt such a code.  And, by choosing not to respond to the motion for partial summary judgment on this count, the plaintiff has failed to bring any contrary authority to the Court's attention.  Therefore, the movants are entitled to summary judgment on this count.  *See* Fed. R. Civ. P. 56(c).

---

[4]The plaintiff has filed a motion to amend her complaint in order to clarify that Count XII is asserted against Defendant Perkins.  R. 84.  Because the Court concludes that the original complaint sufficiently pleads a claim against Defendant Perkins under Count XII, this motion will be denied as moot.

## X. Conclusion

For the foregoing reasons, it is hereby **ORDERED** as follows:

1.      The movants' Motion for Partial Summary Judgment on Count I, R. 77, is **GRANTED**.

2.      The movants' Motion for Partial Summary Judgment on Counts IV, V, and VII, R. 79, is **GRANTED**.

3.      The movants' Motion for Partial Summary Judgment on Counts IX, X, XI, XIV, and XV, R. 80, is **GRANTED**.

4.      The movants' Motion for Partial Summary Judgment on County XII, R. 81, is **GRANTED IN PART** and **DENIED IN PART**.  In particular:

      a.      Summary judgment is **GRANTED** in favor of the movants on each of the negligent hiring claims.

      b.      Summary judgment is **GRANTED** in favor of Defendant Steele with respect to the negligent supervision and retention claims asserted against her in her individual capacity.

      c.      Summary judgment is **DENIED** with respect to the negligent supervision and retention claims asserted against the School Board and Defendant Steele in her official capacity.

      d.      Summary judgment is **DENIED** with respect to the negligent supervision and retention claims asserted against Defendant Perkins in his individual and official capacities.

5.      The movants' Motion for Partial Summary Judgment on Count XIII, R. 82, is

26

**GRANTED**.

6.      The plaintiff's Motion to File Amended Complaint, R. 84, is **DENIED AS MOOT**.

This the 30th day of June, 2009.

Signed By:

*Amul R. Thapar*

United States District Judge